IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Bankruptcy Case 09-35759-H4-11 |
| Demay International LLC, | § | |
| | § | Civil Action H-10-2128 |
| Debtor | § | |
| | § | |

| | |
|---|---|
| GSL of Ill, LLC, | § |
| | § |
| Appellant, | § |
| | § |
| V. | § |
| | § |
| McCAFFETY ELECTRIC COMPANY, | § |
| | § |
| Appellee, | § |

**OPINION AND ORDER**

The above referenced action is an appeal of a bankruptcy judge's June 9, 2010 order[1] overruling an Objection to Proof of Claim 67 of McCaffety Electric Co., Inc. ("McCaffety") and directing that McCaffety be paid $337,279 from the escrow proceeds from a sale of assets of the Debtor Demay International, LLC's estate.

The Bankruptcy Court observed at the opening of his Memorandum Opinion that he was addressing "thorny issues related to trade fixtures, removables, mechanic's liens, and leases" in this battle between GLS of Ill, LLC ("GSL"), the Debtor's largest secured

---

[1] The Order is #399, supported by a Memorandum Opinion, #398, in Bankruptcy Case No., 09-35759-H4-11; Record on Appeal ("ROA") #4-37, 4-38.  It is also published: *In re Demay International, LLC*, 431 B.R. 164 (Bkrtcy. S.D. Tex. 2010).

creditor, and McCaffety, holding a mechanic's lien on the electrical equipment McCaffety installed on the Debtor's leased premises.  #4-37 at p. 1.

After reviewing the record and the applicable law, the Court finds no error in the Bankruptcy Court's rulings and accordingly affirms the Memorandum Opinion and Order.

### Relevant Facts

Around November 22, 2006 Demay International, LLC ("Demay" or "the Debtor"), as lessee, entered into a commercial real property lease agreement ("Lease Agreement") ROA #4-18) with Dumay Real Estate, LLC ("Landlord"), an entity unrelated to the Debtor. Section E(1) on p. 5 of the Lease Agreement (the "Alterations Provision") stated,

> 1. Alterations.  Any physical additions or improvements to the Premises made by Tenant will become property of Landlord.  Landlord may require that Tenant, at the end of the Term and at Tenant's expense, remove any physical addition and improvements, repair any alterations, and restore the Premises to the condition existing at the Commencement Date, normal wear excepted.

They also agreed, in a "Tenant Improvement Rider to the Lease," that the cost of the improvements to the leased premise would be borne mainly by the Landlord (#4-18 at p. 13):

> B. Performance of Work.  Tenant will be responsible for retaining Contractor to perform the Work, subject to approval of Landlord.  Contractor will obtain all required permits for the Work.  After approval of the Plans, Contractor will be instructed to perform the Work in accordance with the approved Plans and all applicable laws.  The cost of performance of the Work will be borne as follows:  Landlord will provide costs up to $3,750,000

on a first dollars in basis.  All costs over and above
the $3,750,000 shall be borne by Tenant and advanced by
tenant in equal funding draws with Landlord once the cost
of the work exceeds a $3,000,000 floor.

After execution of the lease on the property, which was
permitted for manufacturing and general industrial use, Demay
contracted with McCaffety to install conduit copper wire, light
fixtures, panels, breakers and connections to (1) equipment
(machines and air conditioning), (2) offices, (3) plugs, and (4)
switches, in addition to incoming primary service and outgoing
secondary service to feed low voltage and high voltage panels, and
electrical controlling mechanisms (the "Electrical Equipment"[2]).
Tr. 5/27/10 at p. 28, l.22-p. 29, l. 22.  The Electrical Equipment
was installed by McCaffety between August 2008-January 2009.  The
termination date of the lease was May 31, 2022.

On August 4, 2009 Demay filed a voluntary petition for relief
under Chapter 11 of title 11 of the United States Code in the
United States Bankruptcy Court for the Southern District of Texas,
Case No. 09-35759-H4-11, *In re:  Demay International, LLC, Debtor*.[3]
By that time, Demay had paid more than $1,536,592 to McCaffety for
the electrical work, but still owed McCaffety $337,279 under the
contract.  That amount is undisputed.  McCaffety claimed a mechanic

---

[2] Defined in Bankruptcy Court's Finding of Fact no. 3, ROA #4-37, 4-38.

[3] In bankruptcy the Debtor continued to operate as Debtor-in-Possession and  no Trustee was appointed.

and materialman's lien[4] against Demay and the Landlord that would attach to the leasehold, including the removables.

On September 10, 2009, the Debtor filed its schedules, and in Schedule B--Personal Property, the Debtor listed "Tenant Improvements" under the "Type of Property" category ("[o]ther personal property of any kind not already listed"), with the current value of the Debtor's interest as "unknown."   Thus the Debtor represented that the improvements were part of the estate.

On November 20, 2009, creditor McCaffety filed a Proof of Claim (No. 67) in the amount of $337,279 in Demay's bankruptcy case and alleged a security interest pursuant to the mechanic and materialman's lien and the electrical system that McCaffety installed at the premises, under Texas Property Code Ann. § 53.001 (Vernon).[5]   ROA #4-15, Ex. A; Memorandum Op. at ¶ 3.   ROA #4-43, 4-44, 4-45, 4-46, 4-47.   Attached to McCaffety's proof of claim was an affidavit from Robert McCaffety, the general manager and part-owner of McCaffety, attesting, "Said material and labor were

----

[4] The Bankruptcy Court found, and no party has disputed, that McCaffety properly perfected its statutory lien under the Texas Property Code § 53.002.   Memorandum Opinion at 14-15.

[5] Under Texas Property Code § 53.021(a)(2), a person has a mechanic's lien if he "labors, specially fabricates the material, or furnishes the labor or materials by virtue of a contract with the owner or the owner's agent, trustee, receiver, contractor, or subcontractor."

furnished to Dumay Real Estate LLC by Claimant . . . for improvement of real property." ROA #4-15, Ex. B.[6]

Also on November 20, 2009 creditor GSL filed a secured proof of claim in Demay's bankruptcy case[7] for $14,505,220.46 and claimed that it held a security interest in essentially all of Demay's assets under Texas Business and Commerce Code Ann. § 9.102. ROA #4-37 (Memorandum Op. at ¶ 2).

Title 11 U.S.C. § 365(d)(4)(emphasis added by the Court) enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),

> (A)  Subject to subparagraph B, an unexpired lease of nonresidential real property under which the debtor is lessee shall be deemed rejected, and the trustee shall immediately surrender that real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of--
>
> > (i) the date that is 120 days[8] after the date of the order for relief; or

---

[6] The Bankruptcy Court found Robert McCaffety "to be very credible on all issues about which he testified." ROA #4-37 at p. 10.

[7] A "security interest" is "an interest in personal property . . . which secures payment or performance of an obligation." Tex. Bus. & Com. Code Ann. § 1.201(35).

[8] Pre-BAPCPA, under the Reform Act of 1994, the number of days to assume or reject was only 60, but the courts follow the case law for both versions as they relate to the bankruptcy judge's approval of extensions of time. *In re Treasure Isles HC, Inc.*, 462 B.R. 645, 649-50 (6th Cir. BAP 2011). This Court through this opinion has replaced 60 or 120 days with "initial period" so as not to distract from the substantive issue.

(ii) the date of entry of an order confirming a plan.

**(B)(i) The court may extend the period determined under subparagraph (A) prior to the expiration of the 120-day period for 90 days on the motion of the trustee or lessor for cause.**

(ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

Under § 365(d)(4), the deadline for Demay to assume or reject executory contracts and unexpired leases, in other words the Lease Agreement at issue here, was December 2, 2010.  Bankr. Docket #1. On December 16, 2009 the Bankruptcy Court granted Demay's motion to extend time to accept or reject executory contracts-real estate lease until March 2, 2010.  ROA #4-8.  No party-in-interest objected to the extension order even though it was outside of the 120-day period in the statute.

On December 22, 2009 the Debtor, in its Motion for Order Approving Bidding Procedures for the Sale of Substantially All of Debtor's Assets Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, moved for authority to sell all of its assets pursuant to 11 U.S.C. § 363 through auction.  On January 11, 2010 McCaffety filed an objection to the proposed sale, stating that the proceeds from the proposed sale would not fully satisfy the outstanding debt owed to McCaffety by the Debtor and demanding that the motion be denied or that McCaffety's mechanic and materialman's lien be recognized in the proceeds of any sale.  ROA #4-11.  McCafferty claimed that

under the Texas Property Code Ann. § 53, its valid mechanic and materialman's lien against leasehold improvements in the amount of $447,279 had priority status over GSL's secured claims.

On January 13, 2010, the Debtor filed an objection to McCaffety's claim on the grounds that the claim should be disallowed as a secured claim (thus becoming an unsecured claim 11 U.S.C. § 506(a)[9]) because the property was leased and thus not the property of the Debtor, which was only a tenant, and therefore the claim was not secured by property of the estate as required by 11 U.S.C. § 506(a). ROA #4-16, 4-17, 4-18. Also on January 13, 2010, McCaffety filed a Motion for Relief From Stay, in the face of an impending sale of the assets, so that McCaffety could "go after the removables because of concerns that we were going to lose our position with the leasehold being sold." #4-58 at p. 11, ll.20-23 (Transcript of hearing on May 27, 2010).

---

[9] Section 506(a)(1) provides,

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim as to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

On January 21, 2010 McCaffety and the Debtor entered into a compromise agreement ("first compromise" or "first stipulation") of the objection to McCaffety's proof of claim, signed by the Bankruptcy Judge, that would allow the sale to take place, with the determination of McCaffety's claim allowance to be made at a later date. In accord with the language of that compromise, the Bankruptcy Court entered an order that the particular assets being transferred under the terms of Schedule A attached to the "Stalking Horse" bid[10] under the terms of First Sale Motion "do not include items upon which McCaffety has a lien"; it further provided that if the successful purchaser assumed the Debtor's Lease with Dumay, it would be subject to McCaffety's lien rights, if valid. ROA #4-19, 4-20.[11]

---

[10] In an effort to maximize recovery of value from an asset sale in bankruptcy, before the court-supervised auction the debtor chooses a buyer, the "stalking horse," from a pool of bidders to make a first bid that establishes a framework for competitive bidding, a floor, so that other bidders cannot low-ball the purchase price. *See, e.g., Official Committee of Unsecured Creditors v. Interforum Holding, LLC*, No. 11-CV-219, 2011 WL 2671254, *1 n.1 (E.D. Wis. July 7, 2011).

[11] Specifically, the Bankruptcy Judge's order restated McCaffety's proposed compromise language:

"Nothing in this Order or in any asset purchase agreement is intended to affect any existing lien right(s), if any, that McCaffety . . . has as of the date of this Order. The parties agree that the specific assets being transferred under the terms of Schedule A attached to the 'Stalking Horse' bid do not include items upon which McCaffety has a lien. With respect to the assumption of executory contracts and leases contemplated thereunder, if the successful buyer assumes the lease with Dumay Real

On February 4, 2010 the Bankruptcy Court approved the Debtor's authority to enter into an APA with the auction's successful bidder, the Stalking Horse Bid, and the bidding procedures for the sale of substantially all of Debtor's assets "free and clear of liens, claims, interests and other encumbrances," pursuant to 11 U.S.C. § 363, and other relief (ROA #4-20).  Included in this order is an Addendum to Asset Purchase Agreement, the second compromise,[12] which added terms to the APA:  It provided,

> With respect to the dispute related to the extent, priority and validity of the lien and claim of [McCaffety], and as outlined in that certain Order dated January 21, 2010 signed by Judge Bohm related to this issue, the Seller shall escrow the sum of $350,000 from the proceeds of the Purchase Price as a source of payment for McCaffety.  These funds shall remain in escrow until the nature, extent and secured status of McCaffety's claims have been finally adjudicated and the court has entered an order for distribution of proceeds.  In that regard, some of the Acquired Assets being sold hereunder may include assets upon which McCaffety asserts a lien, such as removables, and such assets are being sold free

> Estate, the lease is subject to all of McCaffety's lien rights against the leasehold, removables and/or real property to the extent that there are any.  In the event that the buyer does not assume the lease with Dumay Real Estate and/or the lease with Dumay Real Estate is rejected, the rejection does not terminate any lien rights McCaffety has against the removables and/or real property, if any.  The parties agree that the issue of the nature, extent, priority and value of any secured claim of McCaffety may be heard together with the objection to proof of claim pending before the court at a later date."

[12] Order Approving Stalking Horse Bid and Bidding Procedures for the Sale of Substantially all of Debtor's Assets Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances.  ROA #4-20.

> and clear of any such lien, with McCaffety's lien being
> transferred to the escrowed funds if it is finally
> determined that McCaffety holds any such valid lien.
> McCaffety may not remove any asset from the property or
> seek to exercise a lien on any of the Acquired Assets.

#4-34, Exs. 5 and 6. In other words, unlike the first compromise,

the second indicated that the Purchaser, Drilling Controls, Inc.,

could buy assets on which McCaffety claimed to have a lien. The

APA's definition of "Acquired Assets" included "all Inventory and

Equipment . . . and other assets, including but not limited to

those listed on Schedule A hereto," but expressly not including the

"Excluded Assets"; the Electrical Equipment was not listed in the

"Excluded Assets." Moreover the APA defined "Equipment" as

including fixtures. ROA #4-20. Schedule A at page 2 attached to

the APA, titled "Inventory, Equipment and Intellectual Property,

Permits, Records and Warranties," lists "Fixtures to the extent

owned by" the Debtor. The Bankruptcy Court approved the proposed

form of the APA in its Order for Approval and Authority to Enter

Into An Asset Purchase Agreement with the Successful Bidder at

Auction and for Authority to Sell Assets Free and Clear of Liens,

Claims, Interests and Other Encumbrances Pursuant to § 363 of the

Bankruptcy Code, and to Grant Other Relief. ROA #4-20 ("Sale

order"). The Sale Order, *id.* at ¶ 8, expressly stated,

> Pursuant to the terms of the APA, the Debtor has agreed
> to sell to Purchaser, and Purchaser will purchase from
> Debtor all of the Acquired Assets owned, leased or
> otherwise utilized by Debtor, including, without
> limitation, the Acquired Assets and rights identified in
> the APA (hereinafter, the assets sold pursuant to the APA

are collectively referred to as the "Acquired Assets" or the "Assets") for a cash purchase price of $14,600,000.

On February 17, 2010 the sale, which included Electrical Equipment, took place, and the proceeds were distributed, with $350,000 being placed in escrow, pending the resolution of the objection to the secured claim filed by McCaffety, and McCaffety's lien was transferred "to the escrowed funds if it is finally determined that McCaffety holds any such valid lien".[13]   ROA Memorandum Opinion Regarding Objection to Proof of Claim 767 of McCaffety, #4-37 at ¶ 15; Order Overruling Objection, # 4-38.

On February 19, 2010 the Debtor gave notice that it rejected the Lease Agreement by filing its Motion to Approve Debtor's Acceptance of One Certain Toyota Lease Agreement and to Reject All Other Executory Contracts. ROA #4-24. It subsequently amended its motion and rejected all executory contracts. ROA #4-28. The Court approved the amended motion on March 23, 2010 and construed it as a Notice of Rejection of Executory Contracts, which would include the Lease, *inter alia*. ROA #4-28.

---

[13] This Court notes that the bankruptcy court has the power to authorize the sale of bankruptcy estate assets "free and clear" of interests or liens under 11 U.S.C. § 363(f) if any of five express conditions is met, as is the case here. Among those conditions is if the "interest is in bona fide dispute," as is the case with McCaffety's lien. Under the statute, if the sale is ordered, a claimant's interest in the property is then separated from the asset to be sold and may then be reattached to cash proceeds of the sale, as is the case with the escrowed funds here.

On March 11, 2010 GSL filed a motion to intervene in Debtor's objection to the claim of McCaffety. ROA #4-27. On March 30, 2010 GSL filed a motion seeking a summary judgment disallowing the secured claim #67 filed by McCaffety on the grounds that it was not supported by property of the estate,[14] and McCaffety responded on April 16, 2010.    ROA #4-29, 4-30, 4-31, 4-32, 4-33, 4-34. McCaffety in response argued that once the Court had approved the sale of the Debtor's assets, McCaffety's lien rights were transferred from the Electrical Equipment and attached to the escrowed funds from the sale.    #4-34, Ex. 5 at p.7, Addendum to Asset Purchase Agreement.[15]   Alternatively McCaffety asserted that

---

[14] In its motion for summary judgment, which the Bankruptcy Court denied, pointing to the Tenant Improvement Rider and the Alterations Provision in the Lease Agreement, GSL argued that the Electrical Equipment installed by McCaffety was a tenant "improvement" and therefore the property of the Landlord, and thus McCaffety's lien never attached to property of the Estate and was not secured.

The Bankruptcy Court rejected that interpretation and opined that under Texas contract law, an interpretation of words "physical additions or improvements" in the Alterations Provision of the Lease must focus on the objective intent of the parties, as revealed in the language of the Lease Agreement, and whether the alteration by the lessee was an "improvement," a "fixture," or a "trade fixture."    *C.W. 100 Louis Henna, Ltd. v. El Chico Restaurants of Texas, L.P.,* 295 S.W. 3d 748, 753-54 (Tex. App.-- Austin 1992, no pet.); *Alexander v. Cooper*, 843 S.W. 2d 644, 646 (Tex. App.--Corpus Christi 1992, no writ).    The Bankruptcy Judge found it was a trade fixture.

[15] McCaffety relies on paragraph 2 to the Addendum, dated February 4, 2010, which expanded the scope of the original stipulation of January 21, 2010 (Ex. 4 to #4-32) and stated,

> With respect to the dispute related to the extent, priority and validity of the lien and claim of McCaffety

-12-

the Debtor had admitted in its schedules that the Electrical Equipment was property of the estate. The Bankruptcy Court granted GSL's motion to intervene on April 20, 2010. ROA 4-35. On May 27, 2010 the Bankruptcy Court held a hearing on the objection to McCaffety's claim and orally denied the motion for summary judgment. ROA #4-37; Transcript, ROA #4-56.

On June 9, 2010 the Court filed its Memorandum Opinion and Order overruling the objection to McCaffety's secured claim and ordering that $337,279 be distributed from the escrowed funds to McCaffety in full satisfaction of its claim. ROA 4-38. GSL filed this timely appeal on June 15, 2010.

## STANDARD OF REVIEW

---

Electric Co. ("McCaffety"), and as outlined in that certain Order dated January 21, 2010, signed by Judge Bohm, related to this issue, the Seller shall escrow the sum of $350,000 from the proceeds of the Purchase Price as a source of Payment for McCaffety. These funds shall remain in escrow until the nature, extent and secured status of McCaffety's claims have finally been adjudicated and the court has entered an order for distribution of proceeds. In that regard, some of the Acquired Assets being sold hereunder may include assets upon which McCaffety asserts a lien, such as removables, and such assets are being sold free and clear of any such lien, with McCaffety's lien being transferred to the escrowed funds if it is finally determined that McCaffety holds such valid lien. McCaffety may not remove any asset from the property or seek to exercise a lien on any of the Acquired Assets.

The Bankruptcy Court approved the sale with the same language on February 12, 2010. #4-32, Ex. 6.

In reviewing a decision of the bankruptcy court, the district court should review *de novo* both conclusions of law and decisions on mixed questions of law and fact, while findings of fact should not be set aside unless clearly erroneous and due regard is given to the Bankruptcy Court's opportunity to judge the credibility of the witnesses. *In re Sandburg Financial Corp.*, 446 B.R. 793 (S.D. Tex. 2011), *aff'd*, 448 Fed. Appx. 415 (5th Cir. 2011); Fed. R. Bankr. P. 8013. A finding is "clearly erroneous" when, even in the presence of supporting evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Carol v. Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005). The appellant bears the burden of demonstrating that a finding of fact by the bankruptcy court is clearly in error. *Perry v. Dearing*, 345 F.3d 303, 309 (5th Cir. 2003). "As long as there are two permissible views of the evidence, we will not find the factfinder's choice between competing views to be clearly erroneous." *In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005), *citing Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). "If the bankruptcy court's account of the evidence is plausible in light of the record viewed as a whole, we will not reverse it." *Id.* When reviewing mixed questions of law and fact, although the reviewing district court must accept the Bankruptcy Court's factual findings unless they are clearly erroneous, the district court "must independently determine the ultimate legal conclusion adopted by

-14-

the bankruptcy judge on the basis of the facts found." *Multi-Mart Branch Office, First State Bank v. Appliance Buyers Credit Corp. (In re Bufkin Bros., Inc.)*, 757 F.2d 1573, 1577-78 (5th Cir. 1985); *In re Gervin*, 300 Fed. Appx. 293, 298 (5th Cir. Nov. 21, 2008).

### Issues on Appeal

Appellant GSL of Ill, LC ("GSL") raises six issues on appeal: (1) Whether the Bankruptcy Court erred in ruling that electrical equipment installed on the real property leased by the Debtor was property of the Debtor's bankruptcy estate, supporting the secured claim of Appellee McCaffety; (2) whether the Bankruptcy Court erred in ruling that the fixtures on the leasehold were sold by the Debtor in its sale of assets; (3) whether the Bankruptcy Court erred in ruling that the interest of the mechanic and materialman's lien on fixtures under the lease was not terminated as to the Debtor when the lease was terminated; (4) whether the Bankruptcy Court erred in ruling that McCaffety's mechanic's lien has a priority interest over GSL's lien; (5) whether the Bankruptcy Court erred in construing the lease agreement provisions that the Debtor owned property claimed by Appellee as security for its claim; and (6) whether the Bankruptcy Court erred in construing the reservation of rights and establishment of escrow under the Asset Purchase Agreement ("APA")[16] and Sale?

### Appellant GSL's Brief (#5)

---

[16] ROA #4-20 at p. 17.

-15-

Noting that "[i]t is basic bankruptcy law that claims in bankruptcy are bifurcated and a claim can only be secured to the extent that the estate owns collateral subject to a valid security interest asserted by a creditor," 15 U.S.C. § 506(a), GSL contends that the Bankruptcy Court erred in allowing McCaffety a secured claim for at least two reasons.   First the Lease Agreement expressly provides that (1) the Landlord, not the Debtor, owned the purported collateral, (2) the addendum reflects that the Lessor paid for the improvements, and (3) the affidavit testimony of Robert McCaffety demonstrates that the material and labor were provided to the Landlord.   Because McCaffety does not claim a lien on the property of the estate, its claim should be paid, if at all, only as an unsecured claim.

Second, argues GSL, the lease was rejected as a matter of law on December 2, 2009, and the subsequent alienation of the leasehold by the Landlord constituted termination of the Lease.   Any mechanic and materialman's lien rights were extinguished against the leasehold and survived only against the real estate, which the Debtor never owned.[17]   Moreover because the Debtor never owned the

---

[17] When a lessee contracts for construction, a mechanic's lien arising from the construction attaches only to the leasehold interest, so when the lease terminates, the tenant has no estate in land remaining upon which the lien may attach.   *Diversified Mortgage v. Blaylock*, 576 S.W. 2d 794, 805 (Tex. 1978)("Our courts have long held that a mechanic's and materialman's lien attaches to the interest of the person contracting for construction.   Thus, if a lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the

alleged collateral, it was not part of the sale approved by the
Bankruptcy Court.  GSL contends that the construction of the Lease
is a mixed question of fact an law, subject to *de novo* review by
this Court.  *Westex Foods, Inc. v. FDIC*, 950 F.2d 1187, 1190 (5th
Cir. 1992).[18]   Section E. of the Lease expressly states that

---

lessor."); *Gen. Elec. Capital Corp. v. BCI Mechanical, Inc.*, No.
05-98-01832-CV, 2002 WL 59342 (Tex. App.--Dallas 2002, pet. denied,
rev. denied).

[18] The Court observes that *Westex* does not make such a
statement.  Courts apply the general rules of construction when
they construe a lease. *Weingarten Realty Investors v. Albertson's,
Inc.*, 665 F. Supp. 2d 825, 838 (S.D. Tex. 1999)(*citing Hasty, Inc.
v. Inwood Buckhorn Joint Venture*, 908 S.W. 2d 494, 499 (Tex. App.--
Dallas 1995, writ denied)), *aff'd*, 234 F.3d 28 (5th Cir.
2000)(Table).  Under Texas law, the court's main concern is to give
effect to the written expression of the parties' intent. *Id.* at
838.   The proper standard is that of "objective intent" as
evidenced by the language used, not the subjective intent of the
parties. *Id.* at 840.   That intention is construed from the
instrument as a whole under the "four corners" rule. *Id.* at 838.
The court is to consider the entire writing in an effort to
harmonize and give effect to every provision so that none is
rendered meaningless. *Id.* Whenever feasible, an agreement should
be interpreted to render performance possible rather than
impossible. *Id.* at 839.   Contract terms are given their plain,
ordinary, and generally accepted meanings unless the contract
indicates they are to be used in a technical or different sense."
*C.W. 100 Louis Henna, Ltd. v. El Chico Restaurants of Texas, LP*,
295 S.W. 3d 748, 754 (Tex. App.--Austin 2009).
     Whether a contract is ambiguous is a question of law. *Id.*,
*citing Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940
S.W. 2d 587, 589 (Tex. 1996).   An unambiguous contract must be
interpreted by the court as a matter of law. *Weingarten Realty*,
665 F. Supp. 2d at 839.   A contract is ambiguous if, after the
court applies the established rules of contract interpretation, the
writing "remains reasonably susceptible to more than one meaning."
*Id.*  An ambiguity does not arise simply because the parties differ
in their interpretations of the contract. *Id.* For an ambiguity to
exist, both interpretations must be reasonable. *Id.* If the court
finds that the contract is ambiguous, it may then consider
extrinsic evidence to ascertain the parties' intent. *Id.* at 839-

physical additions or improvements to the premises made by the debtor would become property of the Landlord, not the Debtor, as noted earlier, while the Tenant Improvements Rider to the Lease and the accompanying affidavit from Robert McCaffety reflect the parties' intent that the Landlord was to be the recipient of the material and labor.  Intent is the main factor in determining whether property has become a fixture,[19] and the Lease is the only evidence in the record of the Debtor's intent.

Furthermore, as a matter of law, the Debtor is required to obtain entry of a court order indicating whether he was or was not assuming the Lease by December 2, 2009 (120 days after filing of the petition on August 4, 2009).  11 U.S.C. § 365(d)(4); *In re*

40.  On the other hand, if the court can give a contract's wording a definite legal meaning or interpretation, it is not ambiguous and the court will not examine extrinsic evidence.  *Id.* at 840.

[19] *Alexander v. Cooper*, 843 S.W. 2d 644, 646 (Tex. App.--Corpus Christi 1992)("A written lease agreement governs the intention of the landlord and tenant with respect to their property rights in fixtures.  The general rule that a tenant may remove and take away trade fixtures at the end of the lease is subject to contracts to the contrary."), *citing Fenlon v. Jaffee*, 553 S.W. 2d 422, 429 (Tex. Civ. App.--Tyler 1977, writ ref'd n.r.e.).  *See also Ashford.Com, Inc. v. Crescent Real Estate Funding III, LP*, No. 14-04-00605-CV, 2005 WL 2787014, *9 (Tex. App.--Houston [14th Dist.] 2005)("A trade fixture is an article attached to a leasehold by a tenant which enables him to carry on the trade, profession, or business which is contemplated by the lease.  The article must be removable without permanent or material injury to the premises.  Generally once a lease is terminated, trade fixtures are presumed to be the tenant's property and are removable at his discretion.  However, this discretion is subject to any contractual provisions to the contrary.  Therefore, if it specifically addresses fixtures, the parties' lease agreement governs the property rights in fixtures. [citations omitted]").

-18-

*Imperial Beverage Group, LLC*, 457 B.R. 490, 497 (Bkrtcy. N.D. Tex. 2011)("When a debtor files for bankruptcy, its obligations under an unexpired lease do not automatically become obligations of the bankruptcy estate.  Instead, the debtor has a period of time after the petition date to decide whether to assume or reject the lease. For commercial real property leases in which the debtor is the lessee, it gets at least 120 days to make that decision (unless a plan of reorganization is confirmed prior to that time).  During that time the automatic stay stops the landlord from terminating the lease.").  GSL insists that the Debtor may not obtain an extension to assume a lease if the extension is not granted within the first 120 days of the case.  *In re Tubular Technologies, LLC*, 348 B.R. 699, 708-09 (Bkrtcy. D.S.C. 2006)("The plain language of the statute and the legislative history each unambiguously indicate that Debtor may not obtain an extension to assume a lease if the extension is not granted within the first 120 days of this case."), *citing In re Maxway Corp.*, 23 F.3d 980, 982 (4th Cir. 1994)("sole function of the court is to enforce a statute according to its terms).  Here the Debtor failed to timely obtain entry of an order extending the period until after the expiration of the statutory limit on December 2, 2009; by the time it was entered on December 15. 2009, the Lease had already been rejected as a matter of law, together with the rights of the Debtor's estate to any of the attributes of such Lease.  Without an interest in the Lease,

the Debtor's estate had no property for the McCaffety lien to
attach to, as required by 11 U.S.C. § 506(a).  McCaffety still held
rights under its mechanic's and materialman's Lien Affidavit
against the owner of the property subject to the Lease.

Here, argues GSL, the parties agreed to postpone the claim
objection determination, but not to acknowledge that the property
being sold was subject to the secured claim disputed by the Debtor.
The Debtor disputed McCaffety's secured claim and McCaffety
objected to the sale of the property of the Debtor, i.e., a bona
fide dispute.  Under 11 U.S.C. § 363(f),

> The trustee may sell property under subsection (b) or (c)
> of this section free and clear of any interest in such
> property of an entity other than the estate, only if--
>
> (1) applicable nonbankruptcy law permits sale of such
> property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such
> property is to be sold is greater than the aggregate
> value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or
> equitable proceeding, to accept a money satisfaction of
> such interest.

The order entered by the Bankruptcy Court on January 21, 2010
indicates that the assets being sold did not include items on which
McCaffety asserts its lien and that "[t]he parties agree that the
issue of the nature, extent, priority and value of any secured
claim of McCaffety may be heard together with the objection to the

-20-

proof of claim pending before the court at a later date." ROA #4-19.  Because the lien did not include the items sold at the sale, there is no way it could attach to the proceeds from the sale.  See also Addendum to  the "APA,", ROA #4-34, Ex. 5 at p.7.  GLS asserts that the Bankruptcy Court's analysis of fixtures is flawed because it assumes the "removable fixtures" belonged to the Debtor when the right to claim them belonged instated to the Landlord; because the Debtor did not own the fixtures, they do not support McCaffety's secured claim.

Alternatively, GSL maintains, if the Court concludes that the collateral was the property of the estate, the Bankruptcy Court ruled that GSL held a prime security interest in virtually all of the Demay assets, so GSL is entitled to the proceeds of the sale. GSL contends that its lien against all the Debtor's assets is superior to McCaffety's.  Any removable trade fixtures have never been the property of the estate that would support McCaffety's alleged secured claim, but belong either to the Landlord or McCaffety.  The escrow fund in this case is less than the balance owed to GSL on its priority secured  claim, so there is no residual for payment of McCaffety's alleged secured claim.

In sum, GSL asks the Court to conclude that no property of the estate is available to secure a claim in favor of McCaffety and that the escrowed proceeds of the Debtor's sale should be applied to GSL's outstanding secured claim.

**Appellee McCaffety's Brief (#6)**

McCaffety notes that under Texas Property Code §53.022 mechanic and materialman's liens attach to leaseholds, removables and leasehold improvements.  Improvements include light fixtures, gears, electrical panels, lamps, wire, and electrical wire, all of which are viewed as "removables" under Texas case law.[20]  *First Nat'l Bank in Dallas v. Whirlpool Corp.*, 517 S.W. 2d 262, 269 (Tex. 1974)(disposals and dishwashers)(recognizing long-standing rule that a mechanic's and materialman's statutory lien upon improvements made is superior to a prior recorded deed of trust lien where the improvements made can be removed without material injury to the land and pre-existing improvements, or to the improvements removed); *In re Orah Wall Financial Corp.*, 84 B.R. 442 (Bkrtcy. W.D. Tex. 1986).

---

[20] "[T]he question of removability is a question of both fact and law.  In order to determine removability, it is necessary to determine whether the improvements to be removed will be injured; whether the freehold (land) will be injured; and, whether pre-existing improvements will be injured.  Injury alone is not sufficient, however, since the test is a legal one of "material" injury.  *In re Orah Wall Financial Corp.*, 84 B.R. 442, 445 (Bkrtcy. W.D. Tex. 1986), *citing Whirlpool Corp.*, 517 S.W. 2d at 269; *Cornerstone Bank, N.A, v, J.N. Kent Const. Co.*, No. 05-91-00499-cv, 1992 WL 86591 (finding that removables included, air conditioning compressors, ceiling tiles and acoustic tiles and their supporting grid, air handling units, distribution air grills, doors, elevator equipment and cab, electric circuit breaker panels, electric light fixtures, copper and aluminum wiring, electric controlling mechanisms, aluminum building numerals, landscape irrigation system and planting materials, headache bar and dumpster fence, but not exterior glass and gasket material, and aluminum framing (Tex. App.--Dallas Apr. 17, 1992).

McCaffety highlights the fact that GSL does not challenge any of the Bankruptcy Court's Findings of Fact supporting its determination that the Electrical Equipment was the property of the estate.  ROA #4-37, Memorandum Op., § II, pp. 1-3, ¶¶ 1, 3, and 7. GSL also fails to acknowledge that under Texas law, mechanic and materialman's liens extend to removables and that the Bankruptcy Court thus correctly determined that McCaffety's lien extended to the Electrical Equipment in dispute.  ROA #4-37, Memorandum Op., § III, pp. 12-14.  The Bankruptcy Court correctly applied Texas contract law, focusing on the objective intent of the parties and whether the alteration by the lessee was an improvement, fixture or trade fixture.  It found that the objective intent of the parties was expressed in the Lease Agreement, that the Electrical Equipment is a trade fixture that the Debtor installed to carry on its trade at the leased property, that the tenant was entitled to take it away from the property at the termination of the lease unless there was an express contract provision to the contrary, and that it was removable without material or permanent injury to the premises and therefore was the property of the estate upon installation and as of the date of the Sale order.  Thus the Bankruptcy Court expressly rejected GSL's claims that the lease dictates that the landlord owned the Electrical Equipment.  Moreover GSL failed to challenge any of the Bankruptcy Court's findings of fact supporting its determination that McCaffety's lien attached to the Electrical

Equipment.  ROA #4-37, Memorandum Op., § II, p. 2.  Moreover the Bankruptcy Court expressly stated why McCaffety's mechanic and materialman's lien was valid:  it was properly perfected under the Texas Property Code requirements and it attached not only to the leasehold estate, but to the Electrical Equipment removables. Furthermore the Bankruptcy Judge correctly determined that McCaffety had a lien on the escrowed funds.  ROA #4-37, Memorandum Op., § II, Pp. 6-8, ¶¶ 16-20, 24.

### GSL's Reply Brief (#7)

Reiterating that under 11 U.S.C. § 506(a), a claim can only be secured to the extent that the estate owns collateral subject to a valid security interest asserted by a creditor, GSL asserts, "In an attempt to reconcile the lien provided by the Texas Mechanic's and Materialman's lien statute against real estate, the Bankruptcy Court allowed McCaffety to leak into a claim secured by the estate, notwithstanding the fact that the estate did not own the real property on which the work was performed.  To accomplish the leap to a secured status against the estate, the Court allowed McCaffety to establish its lien on personalty (removables) that are still in possession of the Landlord under the Lease and have never belonged to the Debtor. . . . '[R]emovables' are not recited in the Statutory Lien Statute."  #7 at p.3.[21]

---

[21] GSL points out that the Bankruptcy Court repeated McCaffety's misstatement of the law in purportedly quoting Texas Property Code § 53.002 as, "A mechanic's and materialmen's lien

Texas Property Code Ann. § 53.022(a)("Property to Which Lien Extends") states "(a) The lien extends to the house, building, fixtures or improvements, the land reclaimed from overflow, or the railroad and all of its properties, and to each lot of land necessarily connected or reclaimed." GSL insists that McCaffety's sole lien is against the leasehold interest, which expired when the buyer under the APA elected not to assume the lease on the real property,[22] and that McCaffety has no "property of the estate" to support a secured claim under § 506(a). There is a procedure for perfecting liens on personal property, chattel, under Chapter 9 of the Texas Business and Commerce Code,[23] *Whirlpool*, 517 S.W. 2d at

_____

attaches to leaseholds, removables and leasehold improvements." The statute does not contain the word "removables" and does not apply to removables, according to GSL. It argues that the Electrical Equipment is no different in character from the refrigerators and ranges that the were found not to be incorporated in the construction of an apartment building and not subject to materialman's liens in *Whirlpool*, 517 S.W. 2d 262.

[22] GSL cites as the only opinion on the issue an unpublished case, *General Elec. Capital Corp. v. BCI Mechanical, Inc.*, 2002 WL 59342 (Tex. App.--Dallas 2002, rev. denied)("When a lessee contracts for construction, a mechanic's lien arising from the construction attaches only to the leasehold interest" and when that lease is terminated, that leasehold interest is gone). GSL insists that the lease agreement here terminated automatically under the statute on December 2, 2009, so the mechanic's lien expired then, too.

[23] Article 9 of the Uniform Commercial Code provides a security interest rather than a mechanic's lien when a contractor or supplier has installed (incorporated into a building, but removable (Tex. Bus. & Comm. Code Ann. § 9.336(a)) an article that might not be covered by the mechanic's lien statute. In relevant part, it creates a valid security interest when three requirements are met: "(1) value has been given; (2) the debtor has rights in the

2667, but McCaffety did not follow it and does not have such a security interest in the Electrical Equipment.

Since the Debtor does not own the real property, the Electrical Equipment, if it belonged to the Debtor, can only be the personal property of the Debtor, and GSL's first lien right requires that GSL prevail against the remaining proceeds of the sale. If the Electrical Equipment is an "improvement" to the leased property, because the Lease Agreement states that improvements to the premises become property of the Landlord, the Electrical Equipment belongs to the Landlord and cannot support a secured claim against the estate.

The first compromise agreement between the Debtor and McCaffety was merely to postpone the determination of McCaffety's claim, not to create a secured claim where none exits. Their agreement did not mean that the property being sold was subject to a secured claim disputed by the Debtor. The first compromise stated, "The parties agree that the issue of the nature, extent, priority and value of any secured claim of McCaffety may be heard together with the objection to the proof of claim pending before

---

collateral or the power to transfer such rights to a secured party; and (3) one of the following conditions is met: (A) the debtor has authenticated a security agreement that provides a description of the collateral . . . " Tex. Bus. & Com. Code Ann. § 9.203(b). It gives the creditor preferred status. *See generally*, Joe F. Canterbury, Jr. and Robert J. Shapiro, Tex. Construction Law Manual § 3:27 (3d ed. database updated Nov. 2011). There is no dispute that McCaffety did not perfect such a security interest on the Electrical Equipment.

the court at a later date."  The subsequent Addendum was included by the Debtor in the APA, to which neither GSL nor McCaffety was a party, and it referenced the first compromise.  To the extent that the property was not estate property under 11 U.S.C. § 541, the Debtor did not have the authority to convey, nor did it convey, that property.  The APA approved by the Court stated that the sale of fixtures was limited to "fixtures owned by the Seller."  GSL maintains that the Bankruptcy Court's analysis of fixtures is incorrect because it assumes that the "removable fixtures" belong to the Debtor, when the right to claim such fixtures belongs to the Landlord.

GSL contends that the Sales Order clearly stated that "sale may include" assets on which McCaffety claims a lien, but it does not transfer any non-existent secured claim.  It maintains that McCaffety has failed to show that it holds a security interest in the personal property of the Debtor.  Meanwhile the Bankruptcy Court determined that GSL holds a prime security interest in nearly all of Demay's assets.

Since the escrow fund held here is less than the balance owed to GSL on its priority secured claim, there is no residual to pay for McCaffety's alleged but unproven secured claim, Appellant insists.

### Court's Decision

Some of the points of appeal overlap, so the Court's rulings do also.

**(1) Whether the Bankruptcy Court erred in ruling that electrical equipment installed on the real property leased by the Debtor was property of the Debtor's bankruptcy estate, supporting the secured claim of Appellee McCaffety**

Ownership of Electrical Equipment contracted for by, and attached to a building leased by, the Debtor under the Lease Agreement depends on (1) how the property is categorized under the law and (2) the intent of the parties to the Lease.

The term "improvement" includes all additions and betterments to a freehold other than trade fixtures. *Big West Oil Co. v. Willborn Bros. Co.*, 836 S.W. 2d 800, 802 (Tex. Civ. App.--Amarillo 1992)(case law defines "improvement" as having broader signification than "fixture") *citing Nine Hundred Main, Inc. v. City of Houston*, 150 S.W. 2d 468 (Tex. Civ. App.--Galveston 1991, dism'd judgmt. cor.); *Cantrell v. Broadnax*, 306 S.W. 2d 429, 432 (Tex. Civ. App.--Dallas 1957, no writ); *Dubin v. Carrier Corp.*, 731 S.W. 2d 651, 653 (Tex. App.--Houston [1st Dist.] 1987, no writ.); and *Dedmon v. Stewart-Warner Corp.*, 950 F.2d 244, 246-47 (5th Cir. 1993)(An improvement can be anything that "permanently enhances the value of the premises" and may be removable as long as it is attached and intended to remain permanently as part of the building, such as a garage door opener or a wall heating unit).

-28-

In *C.W. 100 Louis Henna, Ltd.,* 295 S.W. 3d at 754-55 [citations omitted](holding that air conditioning units that were purchased and installed by the tenant for the purpose of running a restaurant within the leased premises were trade fixtures, not improvements, and the tenant would continue to own them afer the lease ended), the Austin Court of Appeals, distinguished "improvements," "fixtures," and "trade fixtures"[24]:

> [T]he term "trade fixture" has been defined many times by the courts. . . . "It is now well accepted that, as between a landlord and his tenant, the term 'trade fixtures' refers to and means such articles as may be annexed to the realty by the tenant to enable him properly or efficiently to carry on the trade, profession, or enterprise contemplated by the tenancy contract or in which he is engaged while occupying the premises, and which can be removed without material or permanent injury to the freehold. . . . It is also well established that trade fixtures are distinguished from "improvements" and other types of fixtures (i.e., personal property affixed to realty). "An improvement

---

[24] The Bankruptcy Court in *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 130 (Bkrtcy N.D. Tex. 2003), opined,

> While a trade fixture is similar to a fixture, in the sense that a trade fixture is an item of personalty that has been annexed, a trade fixture is "to be distinguished from other fixtures attached to the property." *Jim Walter Window Components v. Turnpike Distribution Ctr.*, 642 S.W. 2d 3, 5 (Tex. App.--Dallas 1982, writ ref'd n.r.e.). Texas case law treats trade fixtures as a subset, or a special type of fixtures--in order for an article of personalty to be a trade fixture, it must first be a fixture generally. *See id. See also Moskowitz v. Calloway*, 178 S.W. 2d 878, 880 (Tex. Civ. App.–Texarkana 1944, writ ref'd n.r.e.)(discussing how trade fixture is a type of fixture, and if personalty claimed to be a trade fixture is not removable without material alteration or permanent injury, such personalty is a general fixture) . . .

includes all additions to the freehold except for trade fixtures which can be removed without injury to the property." . . . "The class of improvements is considered to be broader than that of fixtures, which are items of personalty that have become permanent parts of the realty to which they are affixed.   Therefore, although all improvements are not necessarily fixtures, any fixture, unless it is a trade fixture, is considered an improvement.   A trade fixture is an item, which can be removed without material or permanent injury to the freehold, that a tenant annexes to realty to enable the tenant to carry on its business." . . . The rationale for these distinctions is that "[i]mprovements made by a vendor, mortgagor or ancestor are made to enhance the value of the estate and to be permanent, while those made by the tenant are temporary and made for purposes of his trade."

*Id.*, *citing Boyett v. Boegner*, 746 S.W. 2d 25, 27 (Tex. App.--Houston [1st Dist. 1988, no writ)("It is now well settled that, as between a landlord and his tenant, the term 'trade fixtures' refers to and means such articles as may be annexed to the realty by the tenant to enable him properly or efficiently to carry on the trade, profession, or enterprise contemplated by the tenancy contract or in which he is engaged while occupying the premises, and which can be removed without material or permanent injury to the freehold."), *quoting Granberry v. Texas Pub. Serv. Co.*, 171 S.W. 2d 184, 186 (Tex. Civ. App.--Amarillo 1943, no writ); *Sonnier v. Chisholm-Ryder Co.*, 909 S.W. 2d 475, 479 (Tex. 1995); *Reames v. Hawthorne-Seving, Inc.*, 949 S.W. 2d 758, 761 (Tex. App.--Dallas 1997, pet. denied); and *Jim Walter Window Components*, 642 S.W. 2d 3, 5 (Tex. App.--Dallas 1982, writ ref'd n.r.e. ), *quoting Menger v. Ward*, 28 S.W.

-30-

821, 823 (Tex. Civ. App.--San Antonio 1984), *rev'd on other grounds*, 87 Tex. 622 (1895).

Generally, mechanic's liens whose inception[25] is subsequent to the date of a deed-of-trust lien will be subordinate to the dead-of-trust lien," except in a narrow exception set out in Texas Property Code § 53.123, styled "Priority of Mechanic's Lien over other Liens":

> (a) Except as provided by this section, a mechanic's lien attaches to the house, building, improvements, or railroad property in preference to any prior lien, encumbrance, or mortgage on the land on which it is located, and the person enforcing the lien may have the house, building, improvements, or any piece of the railroad property sold separately,
>
> (b) The mechanic's lien does not affect any lien, encumbrance, or mortgage on the land or improvement at the time of the inception of the mechanic's lien, and the holder of the lien, encumbrance, or mortgage need not be made a party to a suit to foreclose the mechanic's lien.

*GCI GP, LLC v. Stewart Title Guaranty Co.*, 290 S.W. 3d 287, 295 (Tex. App.--Houston [1st Dist. 2009), *citing Diversified Mortgage v. Lloyd D. Blaylock General Contractor, Inc.*, 576 S.W. 2d 794, 806 (Tex. 1978). The Texas Supreme Court construes the seemingly

---

[25] "The time of inception of a perfected materialman's lien is the earlier of either (1) the commencement of a lienholder's construction of improvements on the property or (2) the lienholder's delivery of material to the land on which the improvements are to be located and on which the materials are to be used." *Texan Drywall, Inc. v. Le*, 2011 WL 2089668, *3 (Tex. App.-Houston [1st Dist.] May 19, 2011), *citing* Tex. Prop. Code Ann. § 53.124(a). Robert McCaffety's affidavit supporting the lien states, "The materials and labor for which payment is requested, were furnished during the month(s) of: August, September, October, November and December 2008 and January 2009." ROA #4-17.

contradictory statute as "granting a priority to a mechanic's lien on improvements over a prior lien, encumbrance, or mortgage on the land when the improvements could be removed without material injury to the land and pre-existing improvements or to the improvements themselves." *Id., citing Whirlpool Corp.*, 517 S.W. 2d at 269 (dealing with predecessor statute).  A mechanic's lien may only attach to land and items that have become annexed to land, such as improvements, which include fixtures but not chattel. *Id., citing id.* at 266, and Tex. Prop. Code. Ann. § 53.022.  Chattel that have been incorporated into realty become "fixtures" that are subject to a statutory mechanic's lien, and such a lien will be superior to a prior deed-of-trust lien when the fixtures can be removed without material injury to the land and to pre-existing improvements or to the fixtures themselves. *Id., citing Whirlpool*, 517 S.W. 2d at 266-67, 269.

Also relevant to determining ownership is the objective intent of the parties, as expressed in the Lease Agreement.

In *Logan v. Mullis*, 686 S.W. 2d 605, 607 (Tex. 1985), the Texas Supreme Court set out three factors relevant to determining if personalty has become a fixture, i.e., a permanent part of the realty to which it is affixed:  the mode and sufficiency of annexation, the adaptation of the article to the use or purpose of the realty, and the intention of the party who annexed the personal property.  Of the three, intent is the most significant. *Id*.  The

-32-

lessee's discretion to remove trade fixtures is subject to any contractual provisions to the  contrary and the lease agreement, if it specifically addresses fixtures, governs the parties' property rights in fixtures. *Ashford.Com, Inc. v. Crescent Real Estate Funding, III, L.P.*. 2005 WL 27870`4, *9 (Tex. App.--Houston, Oct. 27, 2005), *citing Boyett v. Boegner*, 746 S.W. 2d 25, 27-28 (Tex. App.-Houston [1st Dist. 1988, no writ), and *Felon v. Jaffee*, 553 S.W. 2d 422, 429 (Tex. Civ. App.--Tyler 1977, writ ref'd n.r.e.). The status of a fixture and the intent of the parties are questions of fact. *Alexander v. Cooper*, 843 S.W. 2d 644, 646 (Tex. App.-- Corpus Christi 1992, no writ), *citing Felon v. Jaffee*, 553 S.W. 2d at 429, and *Goodyear Service Stores v. Clegg*, 361 S.W. 2d 445, 446 (Tex. Civ. App.--San Antonio 1962, no writ).

In *C.W. 100 Louis Henna,* the court ruled that the fact that the lease did not define "trade or business fixtures" reflected the parties' intent to employ the well established definitions and concepts set out in the case law, while the lease's provision that the tenant could remove all or part of its equipment, removable fixtures, signs, and other personal property from the premises, but that it must repair all damage to the improvement caused by that removal, was consistent with the common meaning of trade fixtures in Texas law.  295 S.W. 3d at 755.

As noted, the "Alterations Provision" in the Lease Agreement between the Debtor and Demay stated,

-33-

> 1. Alterations.  Any physical additions or improvements
> to the Premises made by Tenant will become property of
> Landlord.  Landlord may require that Tenant, at the end
> of the Term and at Tenant's expense, remove any physical
> addition and improvements, repair any alterations, and
> restore the Premises to the condition existing at the
> Commencement Date, normal wear excepted.

The Bankruptcy Court found that the Electrical Equipment in dispute is a trade fixture because (1) the Debtor installed it to carry on its business on the lease premise and (2) "uncontroverted and credible testimony indicated that removal of the Electrical Equipment would occur with no damage to the property." Memorandum Opinion at 12-13, *citing Jim Walter*, 642 S.W. 2d at 5 (concluding that components of an electrical system are trade fixtures"); *Granberry v. Tex. Pub. Serv. Co.*, 171 S.W. 2d 184, 186 (Tex. Civ. App.--Amarillo 1943, no writ)(finding that electric light fixtures were trade fixtures installed to meet the need to provide light for tenant's offices and a salesroom and were easily removed without damage to the building by untwisting the wires).  Case law demonstrates that trade fixtures are not included in the standard definition of additions and improvements.  *See, e.g., Sonnier*, 909 S.W. 2d at 479 ("An improvement includes all additions to the freehold except for trade fixtures, which can be removed without injury to the property.").  *See also Gorman v. Ngo H. Meng*, 335 S.W. 3d 797, 804 (Tex. App.--Dallas 2011)("An improvement includes all additions to the land other than trade fixtures that can be removed without injury to the property.").  The Bankruptcy Court

found that the Electrical Equipment is a trade fixture not only because of precedential case law,[26] but because it fits the standard legal definition. "First, the Debtor installed it to carry on its trade at the leased property. [Finding of Fact no. 3]. Second, uncontroverted and credible testimony indicated that removal of the Electrical Equipment would occur with no damage to the property. [Finding of Fact No. 3]." Memorandum Opinion, ROA #4-37 at p. 13. The Bankruptcy Judge pointed out that evidence during a hearing on May 27, 2010 indicated the Electrical Equipment is replaceable and is replaced in the ordinary course of business. Robert McCaffety, whose testimony the Bankruptcy Judge found very credible, testified that his company frequently removed and resold electrical equipment that it had installed previously. #4-58, 4-59. Trade fixtures are excluded from the definition of physical additions and improvements. *Sonnier*, 909 S.W. 2d at 479. Because the Electrical Equipment is a trade fixture, it does not fall under the

---

[26] One court found that electrical components such as wall switches, plugs, electrical cover plates and electrical control panels to be "removables" because they are "neither incorporated nor does the removal cause injury" and because they "are frequently replaced, removed, and so forth in ordinary maintenance." *In re Orah Wall Financial Corp.*, 84 B.R. 442, 447 (Bkrptcy. W.D. Tex. 1986). *See also Cornerstone Bank, N.A. v. J.N. Kent Const. Co.*, No. 05-91-00499-CV, 1992 WL 86591, *4-5 (Tex. App.--Dallas Apr. 17, 1992)(finding to be removable elevator equipment and cab, electric circuit breaker panels, electric light fixtures, copper and aluminum wiring, and electrical controlling mechanisms); *Richard H. Sikes, Inc. v. L&N Consultants, Inc.*, 586 S.W. 2d 950, 954 (Tex. Civ. App.--Waco 1979)(improvements installed by contractor subject to mechanic's lien include components of air conditioning and heating equipment, burglar alarms, light fixtures).

Alterations Clause ("physical additions or improvements to the Premises made by Tenant will become the property of Landlord") and is properly the property of the Debtor/Tenant and the estate when it is installed,[27] which was prior to the assets sale.  Memorandum at 12-14.

This Court finds that the Bankruptcy Court's reasoning and findings are not clearly erroneous and affirms its decision on this point.

**(2) Whether the Bankruptcy Court erred in ruling that the fixtures on the leasehold were sold by the Debtor in its sale of assets**

GSL claims that there was no valid materialman's lien on the fixtures because such a lien can only attach to the leasehold, not to personalty under Texas Property Code Ann. § 53.002, and that the Bankruptcy Court incorrectly inserted "removables" into the statute.

A mechanic's lien extends to fixtures as well as to the land to which they are necessarily connected.  Texas Jur. Mechanics § 24 ("The mechanic's lien statutes are intended to encompass realty and such personal property has been incorporated in or consumed in the construction or repair thereof or delivered for such purposes.  The lien extends to . . . fixtures."), *citing Whirlpool*, 517 S.W. 2d

---

[27] Generally a tenant may take away trade fixtures from the property at the termination of the lease unless there is an express contract provision to the contrary.  *Alexander*, 843 S.W. 2d at 646. There is no such provision in the Lease Agreement.

262.[28] The Bankruptcy Court's finding that the Electrical Equipment had been incorporated into the building leased by Demay for its business was not clearly erroneous.  Nor was his determination that the equipment was removable without damage to the building.  The Electrical Equipment installed in the leased premises here was not merely plugged in, as were the refrigerators and ranges excluded from such liens in *Whirlpool*, but installed and incorporated into the building.  *Id.* at § 28.  *See Granberry v. Texas Public Service Co.*, 171 S.W. 2d 184, 186-87 (Tex. Civ. App.--Amarillo 1943)(finding electric lighting fixtures installed in office building were trade fixtures that may be removed by the tenant at the end of the term of the lease); *Moskowitz v. Calloway*, 178 S.W. 2d 878, 880 (Tex. Civ. App.--Texarkana 1944, writ ref'd n.r.e.)(air cooling system installed to carry on tenant's business is a trade fixture); *White v. Cadwallader & Co.*, 299 S.W. 2d 189, 191 (Tex. Civ. App--San Antonio 1957, writ ref'd n.r.e.)(finding standard assembly-line heating and air conditioning unit a trade fixture);

---

[28] "A statutory mechanic's lien may only attach to land and items that have become annexed to land, such as improvements (including fixtures), not to chattel." *GCI GP, LLC v. Stewart Title Guar. Co.*, 290 S.W. 3d 287, 295 (Tex. App.--Houston [1st Dist.] 2009), *citing* Tex. Prop. Code Ann. § 53.022 (Vernon 2007), and *First National Bank in Dallas v. Whirlpool Corp.*, 517 S.W. 2d 262, 269 (Tex. 1975)(holding that a statutory mechanic's lien was meant to encompass "realty and such personal property as has been incorporated or consumed in the construction or repair thereof or delivered for such purposes").  Chattels that have been incorporated into realty become fixtures are subject to a statutory mechanic's lien.  *Id.*

*Jim Walter Window Components v. Turnpike Distrib. Ctr.*, 642 S.W. 3d 3, 5 (Tex. App.--Dallas, writ ref'd n.r.e. 1982)(electrical system including installation of switch boxes, breaker boxes, junction boxes, electrical conduit and a transformer, attached to power supply of building but not integrated into the building structure was a trade fixture and parties intended to allow tenant to remove them if he wanted after term of lease).  The Bankruptcy Court's finding that the Electric Equipment in this action was a trade fixture was not clearly erroneous.

Furthermore, the comparison of the first compromise and the second indicates that pursuant to the second, the fixtures subject to the mechanic's and materialman's lien could be sold in the sale of the Debtor's assets.  GSL and McCaffety agreed to the sale as long as the proceeds protected the creditors' interests because, as discussed above, the Electrical Equipment was the property of the Debtor.

The Bankruptcy Court found that the true intent of the parties regarding the lien and the assets to which it was attached was expressed in definitions in the APA and the Sale Order of the Bankruptcy Court.  The definition of "Acquired Assets" included all Inventory and Equipment . . . and other assets, including but not limited to those listed on Schedule A hereto," but expressly not including the "Excluded Assets"; the Electrical Equipment was not listed in the "Excluded Assets."  Moreover the APA defined

-38-

"Equipment" as including fixtures.  ROA #4-20.  Schedule A at page 2 attached to the APA, titled "Inventory, Equipment and Intellectual Property, Permits, Records and Warranties," lists "Fixtures to the extent owned by" the Debtor.  The Sale Order further stated, "Pursuant to the terms of the APA, the Debtor has agreed to sell to the Purchaser, and Purchaser will purchase from Debtor all of the Acquired Assets owned, leased, or otherwise utilized by Debtor, including, without limitation, the Acquired Assets and rights defined by the APA (hereinafter, the assets to be sold pursuant to the APA are collectively referred to as the 'Acquired Assets' or the 'Assets') for a cash purchase price of $14,600,000."  ROA #4-20 at p. 3.

The Court finds that the Bankruptcy Judge did not err in ruling that the trade fixtures could be sold as the Debtor's property at the asset sale.  That sale preceded termination of the lease, as will be discussed below, and therefore the lien did not perish before the sale.

**(3) whether the Bankruptcy Court erred in ruling that the interest of the mechanic and materialman's lien on fixtures under the lease was not terminated as to the Debtor when the lease was terminated**

Strictly construing 11 U.S.C. § (d)(4), GSL has argued that the lease was terminated on December 2, 2009 because the Bankruptcy Court failed to extend the statutory period for the debtor to assume or reject an unexpired lease of nonresidential real property

before that period expired.  GSL relies on *Debartolo Properties Management, Inc, v. Devan*, 194 B.R. 46, 52 (D. Md. 1996)(holding that the bankruptcy court acted outside its statutory authority when it entered an order to extend the time to assume or reject lease after the permissible period).  *In accord, In re Taynton Freight System, Inc.*, 55 B.R. 668, 671 (Bkrtcy. Pa. 1985); *Matter of Coastal Industries, Inc.*, 58 B.R. 48 (Bkrtcy. D.N.J. 1986).

Nevertheless, there is a division among the courts as to whether the order granting an extension must be entered within the initial (60 or 120-day) period.[29]  Some courts have allowed the bankruptcy court to hold a hearing and order an extension after the initial period as long as the request for an extension was timely filed within the original 120-day period.  These include two lower courts in the Fifth Circuit, one expressly affirmed on the issue by the Fifth Circuit, allowing the bankruptcy court to hold a hearing and grant an extension of time to assume or reject an unexpired lease outside of the initial period *as long as the motion was filed during the initial period.  See, e.g., Chapman Inv. Associates v. American Healthcare Management, Inc.*, 94 B.R. 420, 422 (N.D. Tex. 1989)(because the words of § 365(d)(4) are not "entirely clear," "a more liberal interpretation of the statute is necessary to effectuate the intent of Congress" and "allow the Bankruptcy Court to continue to grant extensions to a debtor if the first extension

---

[29] See footnote 8.

was requested within the [initial period] and all subsequent extensions are sought prior to the expiration of a current extension and if cause exists for each extension"), *aff'd, Matter of American Healthcare Management, Inc.*, 900 F.2d 827, 829-30 (5th Cir. 1990); *In re Ham Consulting Co./William Lagnion/JV*, 143 B.R. 71, 75 (Bkrtcy. W.D. La. 1992); *see also In re Southwest Aircraft Servs.*, 831 F.2d 848, 853 (9th Cir. 1987)(court may rule on motion to assume lease brought within [initial period] afer period has expired), *cert. denied*, 487 U.S. 1206 (1988); *In re Treasure Isles HC, Inc.*, 462 B.R. 645, 649-51 (6th Cir. BAP 2011)(Debtor satisfied statutory deadline for assuming lease by filing its motion to assume before deadline's expiration).

In the Bankruptcy Court, Demay filed a motion to extend time to accept or reject Executory Contracts on November 23, 1009 (#111 on that docket sheet), but the Bankruptcy Judge only granted it on December 15, 2009, thirteen days after the initial period expired. Under *Chapman*, this Court finds that the extension of the period to assume or reject the lease was valid.

Regardless, the Court concludes that it does not matter because the ruling outside of the initial period did not terminate the lease and because a rejection does not effect termination of an unexpired commercial lease. "Rejection," i.e., the Debtor's decision not to assume a lease or executory contract, does not equate to "termination," whether the rejection occurred

-41-

automatically pursuant to 11 U.S.C. § 365(d)(4) on December 2, 2009, the statutory deadline for rejecting executory contracts (because the Bankruptcy Judge did not extend the period until after that date), or later,[30] for third-party creditors. Instead, the Fifth Circuit has held that as a matter of law "rejection is treated as a breach [of the executory contract] "to preserve the rights of the party whose lease with the debtor has been rejected by providing a pre-petition claim." *Matter of Austin Development Co.*, 19 F.3d 1077, 1082 (5ᵗʰ Cir. 1994)(*citing In re Continental Airlines*, 981 F.2d 1450, 1459 (5ᵗʰ Cir. 1993)("to assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached"; consistent with interpreting rejection as a breach, § 502(g) "permits the creditor on a rejected lease or executory contract to assert a claim for damages as of the date of bankruptcy")), *cert. denied*, 513 U.S. 874 (1994); *In re Modern Textile, Inc.*, 900 F.2d 1184, 1191 (8ᵗʰ Cir. 1990)(holding that Trustee's rejection of an unexpired lease did not terminate Debtor's obligations under the lease, but the lessor has a claim for breach of the lease that arises as a result of the rejection under 11 U.S.C. § 365); and *Leasing Service Corp. v. First Tennessee Bank, Nat'l Ass'n*, 826

---

[30] Other possible rejection dates include February 19, 2010 when the Debtor moved for approval of its acceptance of one certain Toyota Lease Agreement (ROA #4-24) or on March 23, 2010 (ROA #4-28), when the Court approved the Debtor's amended proposal to reject all executory contractors.

F.2d 434, 436-37 (6th Cir. 1987)("[R]ejection or assumption of an executory contract determines only the status of the creditor's claim, i.e., whether it is merely a pre-petition obligation of the debtor or is entitled to priority as an expense of administration of the estate."). *See also In re H.B. Leasing Co.*, 188 B.R. 810, 815 (Bkrptcy. E.D. Tex. 1995)(Rejection does not terminate the unexpired lease nor the Debtor's security interest in it).

The Lease at issue here, ROA #4-18 at p.7, also supports such an interpretation, and the lease was not "terminated" before McCaffety's mechanic's lien was transferred to the sale's escrow fund and nor before the sale under the terms of the agreement:

> 10. *Default by Tenant/Events*. Defaults by Tenant are (a) failing to pay timely Rent, (b) abandoning or vacating a substantial portion of the Premises, and (c) failing to comply within ten days after written notice with any provision of this lease other than the defaults set forth in (a) and (b) above.

> 11. *Default by Tenant/Landlord's Remedies*. Landlord's remedies for Tenant's default are to (a) enter and take possession of the Premises, after which Landlord may relet the Premises on behalf of Tenant and receive the Rent directly by reason of the reletting, and Tenant agrees to reimburse Landlord for any expenditures made in order to relet; (b) enter the Premises and perform Tenant's obligations; and (c) terminate this lease by written notice and sue for damages. Landlord may enter and take possession of the Premises by self-help, by picking or changing locks if necessary, and may lock Tenant or any other person whom may be occupying the Premises, until the default is cured, without being liable for damages.

As for the "termination" of the lease, the uncontroverted testimony of John Gross at the hearing on May 27, 2010 was that the

Debtor's rent on the lease was paid through February 18, 2010.  ROA
#4-59, Transcript of Hearing on May 27, 2010, testimony of John E.
Gross, President of Dumay, whom the Bankruptcy Judge found "very
credible on all issues about which he testified" (ROA #4-37 at p.
10), at p. 65. ll, 16-p. 66, l.1; #4-59 at p. 75.  Thus the lease
was not terminated before that date.[31]  Because the Bankruptcy Court
approved the second stipulation in the Addendum, whose broad
language included at least some of the assets to which McCaffty's
lien attached, in the Addendum on February 5, 2010, approved the
sale setting aside an escrow of $350,000 and transferring
McCaffety's lien to those proceeds for payment if it was
subsequently determined to be valid, and held the sale before
February 18, 2010, the lease was not "terminated" before the lien
attached to the escrow proceeds.  Therefore the lien did not expire
with the lease, but was assigned and transferred earlier, before
termination of the lease, to the escrowed funds on February 12,
2010.[32]

The Court concludes that the Bankruptcy Judge did not err in
determining that the materialman's lien did not expire before the

---

[31] One of the bidders, Drilling Controls, entered into a new
lease with Dumay for the property.  At that point, which was after
the mechanic's lien had been transferred to the escrowed sale
proceeds, the lease clearly was terminated.

[32] Mr. Gross further testified that the Debtor did not
surrender the property but that, as permitted by the Lease, Dumay
leased it to a new tenant, Drilling Controls, Inc., one of the
bidders for the assets.  ROA #4-59 at p. 66, ll. 2-18.

sale or before the lien was transferred and attached to the escrowed proceeds from that sale.

**(4) Whether the Bankruptcy Court erred in ruling that McCaffety's mechanic's lien has a priority interest over GSL's lien**

Because at the time of the sale the resale value of the Electrical Equipment was between $374,348.63 and $561,522.94, it was valued at more than McCaffety's claim, which was thus secured. The Bankruptcy Court correctly applied established law that a materialman's lien has priority over the lien of a deed of trust under the narrow exception set out in Texas Property Code § 53.123. *Whirlpool Corp.*, 517 S.W. 2d at 269 ("the rule of long standing that a mechanic's and materialman's statutory lien upon improvements made is superior to a prior recorded deed of trust lien where the improvements made can be removed without material injury to land and preexisting improvements, or to the improvements removed")(and cases cited therein); *Exchange Savings & Loan Assoc. v. Moncrete Pty. Ltd.*, 629 S.W. 2d 34, 36 (Tex. 1982)(under the statute, "a perfected materialsman's lien upon improvements is superior to a prior recorded deed of trust lien if the materials furnished can be removed without material injury to (1) the land, (2) the pre-existing improvements, or (3) the materials themselves."); *Diversified Mortgage v. Lloyd D. Blaylock General Contractor, Inc.*, 576 S.W. 2d 794, 806 (Tex. 1978); *In re Bigler,*

*LP*, 458 B.R. 345, 378-79 (Bkrtcy. S.D. Tex. 2011); *GCI GP, LLC v. Stewart Title Guar. Co.*, 290 S.W. 3d at 295.

**(5) Whether the Bankruptcy Court erred in construing the lease agreement provisions that the Debtor owned the property claimed by Appellee as security for its claim**

The Court has indicated above why it finds that the Bankruptcy Court did not err in finding that the Debtor owned the trade fixtures McCaffety installed on the leased property and that the Bankruptcy's finding is not clearly erroneous.

**(6) Whether the Bankruptcy Court erred in construing the reservation of rights and establishment of escrow under the APA and Sale**?

Despite GSL's ongoing argument that the Electrical Equipment belongs to the Landlord, this Court has explained why McCaffety has a valid lien for the services and Electrical Equipment it provided to lessee Demay, why that equipment is a trade fixture that Demay had the right to take after the lease was terminated, and how the February 2, 2010 Bid Procedures Order of the Bankruptcy Court, which included the second compromise, and provided for sale of the property to which the valid lien attached *inter alia* and for transfer of the lien to $350,000 of escrowed sale proceeds to satisfy McCaffety's objection to a sale because its lien was not being protected (ROA #4-11, 4-15). The Sale Order issued and the sale was held on February 17, 2010, before the Debtor gave notice

of its rejection of the lease on February 19, 2010 (only approved by the Court on March 23, 2010) or before termination of the lease occurred.   The Court concludes that the Bankruptcy Court did not err in determining that McCaffety has s superior right to recover $337,279 against the escrowed funds.

Accordingly, the Court

AFFIRMS Judge Bohm's June 9, 2010 Memorandum and Opinion and Judgment in Bankruptcy Case No. 09-35759-H4-11, ROA  #4-37, 4-38.

**SIGNED** at Houston, Texas, this  30th  day of  March  , 2012.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE
